United States Court of Appeals,

Eleventh Circuit.

No. 94-5114.

Armin GROSZ, Sarah Grosz, Plaintiffs-Appellants,

v.

CITY OF MIAMI BEACH, FLORIDA, Defendant-Appellee.

May 9, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-2332-FAM), Federico A. Moreno, Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and FOREMAN[*], Senior District Judge.

EDMONDSON, Circuit Judge:

Armin and Sara Grosz appeal the Rule 12(b)(6) dismissal of their Religious Freedom Restoration Act claim for declaratory and injunctive relief. We vacate the order dismissing their complaint and remand for further proceedings.

Armin Grosz is an Orthodox Jewish Rabbi who lives in the City of Miami Beach with his wife, Sara. Both Armin and Sara Grosz are plaintiffs below and are appellants here; for convenience we will usually refer to Armin Grosz only when discussing these parties. Members of Grosz's sect come to his home to pray because they believe their prayers are more readily answered when their prayers are recited with Grosz, who is known as a pious rabbi. Conducting "organized, publicly attended, religious services" where the Grosz's house is located is forbidden by the City's zoning ordinances.

---

[*]Honorable James L. Foreman, Senior U.S. District Judge for the Southern District of Illinois, sitting by designation.

Over ten years ago, Grosz obtained—on First Amendment Free Exercise grounds—summary judgment enjoining the operation of this same zoning ordinance. But that judgment was overturned in *Grosz v. City of Miami Beach (Grosz I),* 721 F.2d 729 (11th Cir.1983). The *Grosz I* appeals court concluded that the burden on the City if it allowed Grosz's conduct outweighed the burden on the Grosz's free exercise interest. *Grosz I,* 721 F.2d at 741. Thus, the *Grosz I* court concluded there was no Free Exercise violation. The City did not—until 1993—see fit to enforce the ordinance against Grosz.

In 1990, the Supreme Court decided *Employment Div., Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith* the Court held that religion-neutral laws of general application do not violate the Free Exercise Clause. Seemingly acting with intent to undo the effect of *Smith,* Congress enacted the Religious Freedom Restoration Act (RFRA), which—in pertinent part—provides:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except ... if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(a)-(b).

In 1993, Miami Beach notified Grosz that the City intended to enforce its zoning and to stop certain religious activity at Grosz's house. In response, Grosz and his wife filed for declaratory and injunctive relief under RFRA. At the pleadings stage, the district court concluded that the Groszes were collaterally estopped from making these claims due to their loss in

*Grosz I* and dismissed their complaint under Rule 12(b)(6).  We vacate and remand for further proceedings.

Collateral estoppel can foreclose relitigation of an issue of fact or law where that *identical* issue has been fully litigated and decided in a prior suit.  *See I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir.1986) (listing elements of collateral estoppel).  The issue in this case that is said to have been litigated in *Grosz I* is RFRA's threshold requirement that the City "substantially burden a person's exercise of religion."  *See* 42 U.S.C. 2000bb-1(a).

Miami Beach says this case is "textbook collateral estoppel" because the *Grosz I* court evaluated the burden that the zoning placed on Grosz's exercise of religion and necessarily concluded the burden was not very great.  *See* 721 F.2d at 739.[1]  The *Grosz I* court observed Miami Beach allowed religious services in all areas except those zoned for single-family use and concluded the burden imposed by the ordinance was that Grosz would have to conduct his services in another part of the city.  *Id.* at 739.  And, while the *Grosz I* court did not specifically term the burden "insubstantial," it did say "[i]n comparison to the religious infringements analyzed in previous free exercise cases the burden here stands towards the lower end of the spectrum."  *Id.* & n. 9 (comparing burden on Grosz to burden in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961)).

*Grosz I* also agreed with the Sixth Circuit's characterization

---

[1]The City does not argue that RFRA is unconstitutional.

in *Lakewood Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood,* 699 F.2d 303 (6th Cir.1983), of a similar zoning law as an "inconvenient economic burden." *Grosz I,* 721 F.2d at 740. And, *Grosz I* relied on *American Communications Ass'n, C.I.O. v. Douds,* 339 U.S. 382, 396, 70 S.Ct. 674, 683, 94 L.Ed. 925 (1950), where the Supreme Court termed "relatively small" the burden on free exercise created by an ordinance excluding churches from residential areas.

Grosz responds that RFRA now requires litigation of a statutory issue sufficiently different from the constitutional issue actually litigated in *Grosz I* to prevent application of collateral estoppel. He says this view is correct especially given the confusion surrounding constitutional claims litigated before *Smith, see Grosz I,* 721 F.2d at 741 (observing threat of "doctrinal confusion" in free exercise cases), and the relative clarity of the analysis commanded by RFRA.

We agree with Grosz. The issue "actually litigated" in *Grosz I* was whether the burden (whatever it might be) on Grosz's free exercise rights outweighed the burden on the City if its zoning ordinance was not enforced. Today, the issue which first must be litigated is whether, under RFRA, the government has "substantially burden[ed]" Grosz's exercise of religion. These issues are not identical—even though pre- *Smith* cases may help interpret RFRA. While the statute and legislative history indicate Congress possibly wanted just to return to pre-*Smith* law through enacting RFRA, Congress chose certain words to effectuate this intent. Where Congress chooses certain words, these words govern our

analysis.

The present case involves largely a question of statutory construction.  And, the meaning of the words "substantially burden," *as those words were used by Congress in RFRA,* was not litigated in *Grosz I.   Cf. Third Nat'l. Bank of Louisville v. Stone,* 174 U.S. 432, 434, 19 S.Ct. 759, 760, 43 L.Ed. 1035 (1899) ("A question cannot be held to have been adjudged before an issue on the subject could possibly have arisen.").[2]

The judgment of the district court dismissing this complaint is vacated.  The case is remanded for further proceedings.

VACATED and REMANDED.

---

[2]Because we conclude that this suit under RFRA presents an issue different from the constitutional issue litigated in *Grosz I,* we do not separately discuss whether RFRA is a "change in the law" preventing the application of collateral estoppel where the doctrine otherwise might apply.  *See generally, North Georgia Elec. Membership Corp. v. City of Calhoun,* 989 F.2d 429, 433-35 (11th Cir.1993).

Also, about 15 years now have passed since the events giving rise to the *Grosz I* litigation occurred.  Collateral estoppel "is not meant to create vested rights in decisions that have become obsolete or erroneous with time ..." *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948);  *see also International Shoe Mach. Corp. v. United Shoe Machinery Corp.,* 315 F.2d 449, 455 (1st Cir.1963) (observing "passage of time may evoke change of circumstances which preclude the creation of an estoppel.")  Sometimes a litigant might deserve an opportunity to develop facts showing a change in circumstances.  But, again, because the issues to be litigated in this case are not the same as those in *Grosz I,* we do not decide the case on this passage-of-time point.