**BAYER AG and Bayer Corporation, Plaintiffs,**

v.

**ELAN PHARMACEUTICAL RESEARCH CORPORATION and Elan Corporation, PLC, Defendants.**

**No. Civ. 2:97–CV–143–WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

March 16, 1999.

Julian D. Fleming, Jr., John L. North,
Russell S. Bonds, Sutherland Asbill &

Brennan, Atlanta, GA, Jeffrey B. Bove (pro hac vice), Stanley C. Macel, III (pro hac vice), Rudolf E. Hutz (pro hac vice), Connolly Bove Lodge & Hutz, Wilmington, DE, for Bayer AG and Bayer Corp., plaintiffs.

David Alan Rabin, Bryan Guy Harrison, Morris Manning & Martin, Atlanta, GA, Nicola J. Bird (pro hac vice), Irell & Manella, Los Angeles, CA, Gary N. Frischling (pro hac vice), Richard M. Birnholz (pro hac vice), Flavio Rose (pro hac vice), Irell & Manella, Los Angeles, CA, for Elan Pharmaceutical Research Corp. and Elan Corp., PLC, defendants.

## *ORDER*

O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of two motions by defendants Elan Pharmaceutical Research Corporation and Elan Corporation, plc, ("Elan"): a motion for summary judgment [49–1] and a motion to file excess pages [102–1].[1]

### I. *Motion to File Excess Pages*

█ Elan filed a motion to allow the filing of a reply memorandum in support of its motion for summary judgment which is five pages in excess of the page limit set forth in the local rules. This request will result in Elan's being granted the same number of additional pages as Bayer. Elan's motion is hereby GRANTED, and the court will consider the entirety of the reply brief in its consideration of the submitted summary judgment motion.

### II. *Summary Judgment Motion*

Plaintiffs Bayer AG and Bayer Corporation ("Bayer") hold U.S.Patent No. 5,264,446 (" '446 patent") for a high blood pressure drug, Adalat CC®. The invention described and claimed in the '446 patent centers on a solid pharmaceutical formulation containing a therapeutically effective amount of crystals of an active ingredient called nifedipine. The '446 patent provides that when relatively small crystals of nifedipine, defined by their specific surface area ("SSA"),[2] are combined with a solid diluent, the resulting compositions produce a sustained release of active nifedipine into the bloodstream.

Once the FDA approves a new drug, generic versions may be developed. Congress enacted legislation to expedite U.S. Food and Drug Administration ("FDA") approval of generic drugs in order to increase the supply affordable drugs. A generic drug manufacturer is required to submit an Abbreviated New Drug Application ("ANDA"), giving detailed information about its generic product including its precise formulation, details about how it will be manufactured, and data showing that it is "bioequivalent" to the approved drug. 21 U.S.C. § 355(j).

If a generic drug manufacturer files an ANDA seeking approval to make a generic version of a drug claimed to be covered by a patent, the generic drug manufacturer must certify either that the generic drug will not enter the market before the patent's expiration date or that the patent is "invalid or will not be infringed by the manufacture, use, or sale of the drug for which the [ANDA] is submitted." 21 U.S.C. § 355(j)(2)(A)(vii)(III)–(IV). In such a case, the applicant must also notify the patent holder and state why the patent is not valid or will not be infringed. 21 U.S.C. § 355(j)(2)(B)(ii). If the patent holder disagrees with the certification, it has 45 days to sue the ANDA applicant for infringement under 35 U.S.C. § 271(e)(2). The filing of a suit suspends FDA approval of the proposed generic drug until the earlier of the court's resolution of the cor-

---

1. These motions were originally filed by EPRC. After Bayer amended its complaint to add Elan as a party, Elan joined EPRC's motions. (Elan's September 14, 1998 Motions to Join.)

2. SSA is the total surface area of all the individual particles per unit weight, expressed in square meters of surface per gram of crystals or "$m^2/g$." SSA is generally inversely proportional to particle size—the larger the particles, the smaller the SSA.

rectness of the ANDA applicant's certification of noninfringement or thirty months from the receipt of the notice.

In its complaint, Bayer alleges that Elan infringed the '446 patent under 35 U.S.C. § 271(e)(2) by filing an ANDA seeking FDA approval of a generic version of Bayer's Adalat CCA®. Section 35 U.S.C. § 271(e)(2) provides that it is "an act of infringement to submit [an ANDA] . . . for a drug claimed in a patent or the use of which is claimed in a patent before the expiration of such patent." In its summary judgment motion, Elan argues that it has not infringed Bayer's patent because: (1) the SSA of Elan's nifedipine crystals, allegedly greater than $5m^2/g$, is above the literal upper limit of Bayer's claimed range of 1 to $4m^2/g$, and (2) the history of Bayer's prosecution of its claims in the U.S. Patent and Trademark Office ("PTO") estops Bayer from now asserting the doctrine of equivalents to cover Elan's drug.

### A.   Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is well settled that a court considering a motion for summary judgment must view the evidence in a light most favorable to the non-moving party. *See,* e.g., *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). It is important to recognize, however, that this principle does not require the parties to concur on every factual point. Rule 56 "[b]y its very terms . . . provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–8, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Summary judgment is equally available in a patent case, *Brenner v. United States,* 773 F.2d 306, 307 (Fed.Cir.1985), although "[a] district court should approach a motion for summary judgment on the fact issue of infringement with great care." *Amhil Enterprises Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1557 (Fed.Cir.1996). Summary judgment is appropriate in patent infringement suits "where the claims do not 'read on' the accused structure" for literal infringement purposes "and a prosecution history estoppel makes clear that no actual infringement under the doctrine of equivalents can be found." *Townsend Engineering Co. v. Hitec Co., Ltd.,* 829 F.2d 1086, 1089 (Fed.Cir.1987) (quoting *Brenner,* 773 F.2d at 307).

### B.   Infringement

■ Notwithstanding that 35 U.S.C. § 271(e)(2) provides patentees with a defined act of infringement enabling a court to promptly resolve disputes concerning infringement, a district court's inquiry in a suit brought under Section 271(e)(2) is the same as it is in any other infringement suit. *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1569 (Fed.Cir.1997). The difference is that the allegedly infringing drug has not yet been marketed; therefore, the infringement determination focuses on what the ANDA applicant will likely market if its application is approved. *Id.* "Under § 271(e)(2)(A), a court must determine whether, if the drug were approved based upon the ANDA, the manufacture, use, or sale of that drug would infringe the patent in the conventional sense." *Id.*

■ Patent infringement occurs when an invention that is literally covered by the claims of a patent, or is equivalent to the claimed subject matter is made, used, or sold during the term of the patent without authorization. 35 U.S.C. § 271. A deter-

mination that a patent is infringed involves a two-stage process. *Novopharm*, 110 F.3d at 1565; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). First, the claim is properly construed to determine its scope and meaning. *Id.* Claim construction is a matter of law, based upon the claim language, the specification, the prosecution history, and necessary extrinsic evidence. *Novopharm*, 110 F.3d at 1565; *Markman*, 52 F.3d at 979. Claims are construed through the eyes of the person of ordinary skill in the field of the invention. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed.Cir.1998). Second, the claim as properly construed is compared to the accused device or process. *Novopharm*, 110 F.3d at 1565; *Markman*, 52 F.3d at 976. Whether an accused product infringes upon patent claims is a question of fact. *Novopharm*, 110 F.3d at 1565.

### 1. Literal Infringement

■ To prove literal infringement, a patentee must show that every limitation of the claims which he alleges to have been infringed is found in the accused device, i.e., "when the properly construed claim reads on the accused device exactly." *Amhil Enter.*, 81 F.3d at 1562. "If an express limitation is absent from the accused product, there can be no literal infringement as a matter of law." *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir.1994).

■ Bayer's '446 patent includes twelve claims, each of which requires "an effective amount of nifedipine crystals with a specific surface area" within a certain range. Claims 1 through 4 define the range as 1.0 to $4m^2/g$; claims 5 through 8 define the range as "about 1.2 to 3.6 $m^2/g$; claims 9 through 12 define the range as 1.3 to $3.1m^2/g$." The only measurement methods taught in the '446 patent are BET measurements made on the batch of starting raw material. Elan's ANDA sets a specification for its proposed product of a specific surface area greater than $5m^2/g$. Elan's

supplier of nifedipine is Arzneimittelwerk Dresden GmbH ("AWD"). Elan has provided evidence that AWD's requirements do not allow the sale of nifedipine under $4.7m^2/g$ to customers for use in products sold in the U.S. Furthermore, Elan offers a certified test of the nifedipine used in its batch of tablets showing a SSA of $6.15m^2/g$.

Although from the above information it would seem clear that Elan's proposed product would not literally infringe Bayer's, Bayer argues that there is no certainty that Elan's ANDA specification and AWD's internal requirements will not change in the future and also contends that the physical sample provided by Elan is not persuasive because Elan is still revising its product. Bayer also points out that nifedipine crystals may increase in size over time, diminishing their SSA. However, it is not enough for Bayer to suggest that the accused product may be infringing at some point in the future. The relevant test is whether Elan's drug, if it were put on the market, *would* infringe Bayer's patent. *See, e.g., Glaxo Inc. v. Novopharm Ltd.*, 931 F.Supp. 1280, 1286 (E.D.N.C.1996), *aff'd*, 110 F.3d 1562 (Fed. Cir.1997), ("If the Court cannot conclude that the accused pharmaceutical product would infringe the relevant patent, it is left with what is at best a hypothesis that the product might be infringing. The patent owner's unproven assertion—which is just a guess—cannot warrant invocation of the Court's injunctive powers."); *Glaxo Inc. v. Boehringer Ingelheim Corp.*, 954 F.Supp. 469, 474 (D.Conn.1996). Nothing about 35 U.S.C. § 271(e)(2) alters the patentee's burden of proving infringement; the patentee has the burden of showing that the product that Elan would likely sell following FDA approval would likely infringe its patent. *Novopharm*, 110 F.3d at 1567–68. Here, Bayer has offered no such evidence. Bayer's unsubstantiated assertions can not form the basis for a literal infringement claim. The court therefore finds that Elan's proposed product does not literally infringe Bayer's patent.

The court's determination as to literal infringement does not leave Bayer without a remedy, however, should its fears someday prove merited. If Elan commences to manufacture a product with a SSA within the range claimed in Bayer's patent, Bayer may then bring an infringement action against Elan. *Boehringer Ingelheim*, 954 F.Supp. at 474–75.

### 2. Doctrine of Equivalents

■■■■ When literal infringement is not established, infringement may be proven under the doctrine of equivalents when there is not a substantial difference between the elements of the patented invention and those of the accused product. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1218 (Fed.Cir.1995). This determination is a question of fact, *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1107 (Fed.Cir. 1996), taken from the perspective of one of ordinary skill in the relevant art. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed.Cir.1996). Under this doctrine, an accused device infringes if it performs substantially the same function in substantially the same way to obtain substantially the same result as the claimed invention. *Conroy v. Reebok Int'l, Ltd.* 14 F.3d 1570, 1574 (Fed.Cir.1994).

■■■■ The doctrine of equivalents is not a license to ignore the claim's limitations "on which the public is entitled to rely." *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed.Cir.1987). Liability under this doctrine also requires an accused product to contain each limitation in the patent or its equivalent. *Athletic Alternatives*, 73 F.3d at 1581. The doctrine of equivalents is limited, however, in that it cannot be used to protect subject matter which is obvious in light of the prior art, *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed.Cir.1990), nor to recapture subject matter that was relinquished during prosecution of the patent. *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951–52 (Fed.Cir.1993).

■■■■ The latter limitation, termed prosecution history estoppel, is at issue in this summary judgment motion—Elan argues in its motion that Bayer is estopped by this principle from asserting the doctrine of equivalents as to Elan's product. Prosecution history estoppel limits the determination of infringement by an otherwise equivalent product by barring recapture by the patentee of subject matter that was surrendered during prosecution in order to promote allowance of the claims. *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1455 (Fed.Cir.1998).

■■■■ The application of this doctrine is a question of law. *Mark I Mktg. Corp. v. R.R. Donnelley and Sons Co.*, 66 F.3d 285, 291 (Fed.Cir.1995). Invocation of the doctrine requires a close examination of what was surrendered by the patentee and also the reason for such a surrender. *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1564 (Fed.Cir. 1990). In determining whether particular subject matter was relinquished, the court does not look to the subjective intent of the applicant, but rather to what a competitor reasonably would conclude from the patent's prosecution history. *Mark I*, 66 F.3d at 291.

■■■■ The prosecution history relevant to this case, which stretches from approximately August 1981 to November 1993 and fills three large volumes, is long and complex. As originally filed in the PTO, Bayer's '446 patent application described its invention as containing nifedipine crystals with a SSA of 0.5 to 6m$^2$/g and described compositions with crystals having a SSA of 1 to 4m$^2$/g as "particularly advantageous". Seven claims were originally presented, reciting two SSA ranges: "0.5 to 6m$^2$/g" (claims 1–3 and 6–7) and "1.0 to 4m$^2$/g" (claims 4–5).The patent examiner rejected Bayer's claims as invalid because of prior art and also stated that "[t]echniques such as grinding or sieving are conventional in the pharmaceutical arts to reduce crystalline materials to coarse or fine powders which inherently increases surface area."

Bayer argued that the claimed SSA ranges provided unexpected results; the examiner did not agree. Bayer amended its claim to raise the lower point of the original range of claim 1 from "0.5 to $6m^2/g$" to "1.0 to $6m^2/g$", arguing that the prior art involved crystals with a SSA smaller than $1m^2/g$ and that the new claimed range had a "plateau of activity." The examiner rejected the claim under 35 U.S.C. § 112 on the grounds that the new range lacked clear support and antecedent basis in the specification. The examiner also continued to reject the remaining claims as unpatentable under 35 U.S.C. § 103. To address the examiner's rejection, Bayer changed the SSA range from "1.0 to $6m^2/g$" to "1.0 to $4m^2/g$." Bayer submitted evidence, attempting to demonstrate "unexpected results," to support a patent. Bayer submitted a declaration of Dr. Porges, showing the unexpected, plateau-like effect of crystals with a SSA of 1.0 to $4m^2/g$. The rejection by the PTO continued through the appeals board, who reversed the grounds of rejection stated by the examiner but set forth a new rejection based on obviousness. In response to the examiner's position that reducing crystal size was not patentable, Bayer argued, "The present invention is not concerned with nifedipine *per se*, but a special form of nifedipine, namely, having a specific surface area of 1 to $4m^2/g$. Such a surface area is not taught or suggested" by the prior art. Bayer contended that all prior art had SSA smaller than $1m^2/g$ and that the upper limit of $4m^2/g$ was of importance because above that limit "such nifedipine-dust can only be worked up with great difficulties to form tablets." In 1990, Bayer's attorney held an interview with the examiner, who agreed to allow Bayer's claims if they were amended to recite a SSA of 1.3 to $3.1m^2/g$, representing the high and values which Bayer had tested in human beings and submitted to the PTO. Bayer continued prosecution, presenting claims with ranges of 1.0 to $4m^2/g$. The examiner asked for data showing that the full scope of this range possessed superior properties over the prior art. In response

to the examiner's request, Bayer submitted new data, all within the 1.0 to $4m^2/g$ range. The examiner found that the data adequately supported the range, and the '446 patent finally issued. Bayer never submitted additional test data or continued prosecution to broaden its claims beyond the SSA of 1.0 to $4m^2/g$.

In support of its prosecution history estoppel argument, Elan offers three grounds which it suggests are "independent": (1) Bayer's failure to submit evidence of unexpected results and its cancellation of claims beyond 1.0 to $4m^2/g$ (i.e., failure to prosecute); (2) Bayer's continued argument to the PTO during prosecution that the range 1.0 to $4m^2/g$ was significant; and (3) Bayer's amendment of its range from 0.5 to $6m^2/g$ to 1.0 to $4m^2/g$.

However, rather than breaking up the underlying events into disparate segments, the estoppel determination should be "based on the reasonable reading, by a person of skill in the field of the invention, of the entire prosecution history." *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1555–56 (Fed.Cir. 1996). *See also EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 897–98 (Fed.Cir.1998) (considering the prosecution history as a whole, including the patent holder's arguments, canceled claims, and amendments, in its estoppel decision); *Litton Sys.*, 140 F.3d at 1462 ("applicants commonly make arguments in combination with an amendment. . . . In such circumstances, the scope of estoppel is a product of the effects of both factors working in concert."); *Mark I*, 66 F.3d at 292 ("the prosecution history must be viewed as a whole to determine whether and what subject matter was surrendered to procure issuance of the patent"). Therefore, the court will consider Elan's purportedly "independent" grounds of prosecution history estoppel as a whole rather than in isolation.

Prosecution history estoppel applies both "to claim amendments to over-

come rejections based on prior art, and to arguments submitted to obtain the patent." *Hughes Aircraft Co. v. U.S.,* 717 F.2d 1351, 1362 (Fed.Cir.1983). "That is not to say, however, that, whenever a limiting amendment or argument is made during prosecution, the patentee loses all coverage between what the claims literally cover and what they would have covered prior to the amendment or argument." *Hormone Research Found.,* 904 F.2d at 1564. Depending on the amendment or argument's nature and purpose, it may have a limiting effect within a spectrum ranging from great to small to zero. *Hughes Aircraft Co.,* 717 F.2d at 1363. Both the character of the assertions made and the result of those assertions (i.e., whether they result in allowance) are examined in determining whether an estoppel is created. *Southwall Technologies, Inc.,* 54 F.3d at 1583.

When an amendment was made by an applicant during its patent prosecution, the patentee bears the burden of establishing a reason for the amendment which is sufficient to overcome prosecution history estoppel. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. at 1051, 137 L.Ed.2d 146. In other words, if the patent owner cannot state a reason for the amendment other than patentability, the court should presume that the reason is such that estoppel would apply.

Bayer argues that its amendment changing the SSA range was not related to prior art and patentability but rather was an answer to the PTO's Section 112 rejection concerning the lack of antecedent basis in the specification for the newly claimed range of 1.0 to 4.0 m²/g. In its brief, Bayer explains this argument:

Bayer originally claimed a range of "0.5 to 6m²/g" in Claim 1. Subsequently, to further distance itself from the prior art, the lower end of this range was raised from 0.5 to 1.0m²/g. The PTO rejected the new range of 1.0 to 6m²/g in claim 1 as lacking support and antecedent basis in the specification.... The only ranges explicitly stated in the specification were 0.5 to 6m²/g and 1 to 4m²/g. These ranges, the examiner concluded, did not provide clear support and antecedent basis for the new claimed range of 1 to 6m²/g in Bayer's amendment. Thus, Bayer further amended claim 1 (as well as claims 2 and 3) to recite the latter range of 1 to 4m²/g, which is literally in the specification. Bayer unequivocally stated that the upper end of the range was lowered to comply with the antecedent basis rule promulgated by the PTO pursuant to the first paragraph of 35 U.S.C. § 112:

In view of the above amendments, applicants believe the rejection of claim 1 under 35 U.S.C. § 112 (first paragraph) has been obviated and withdrawal of such rejection is respectfully solicited.

(Bayer's Response Brief at 17 n. 16 (citations omitted)). Bayer argues that its amendment in response to the PTO's Section 112 rejection did not generate estoppel.

Elan makes several arguments in response. First, in the sentence following its Section 112 rejection, the PTO continued to reject Bayer's patent as unpatentable under Section 103 (Elan's Reply Brief at 12–13). Second, Bayer's argument that the PTO's rejection was merely formalistic is belied by the fact that Bayer sought and obtained claims with SSA ranges of 1.3 to 3.1m²/g which range was never explicitly stated in the original application (*Id.* at 13 n. 7).

Elan further argues that Bayer's failure to offer data to the PTO showing unexpected results for crystals with a SSA greater than 4m²/g and the cancellation of its broader claims constituted a failure to prosecute leading to estoppel of Bayer's claim under the doctrine of equivalents. In *Haynes Int'l, Inc. v. Jessop Steel Co.,* the Court held that estoppel could be created by a patentee's failure to continue prosecution to obtain claims broader than those issued when the broader claims were

rejected by the PTO based on the prior art. *See also Insta–Foam Prod., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698, 703 (Fed.Cir.1990) (holding that patentee's abandonment of claims did not form a basis for prosecution history estoppel when it was not abandoned because of the PTO's rejection based on prior art). Again, Bayer responds that its failure to prosecute broader claims is not subject to estoppel on this basis because the PTO's rejection of the broader range was not based on the prior art.

The court agrees with Elan that although the PTO based its rejection of Bayer's claims in part under Section 112, it simultaneously reiterated its rejection of the claims under Section 103. Furthermore, prosecution history estoppel is not limited only to embodiments shown in the prior art, *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 867–68 (Fed.Cir.1993). An amendment made for reasons other than patentability can give rise to an estoppel if it "evinces an unmistakable surrender." *Litton Sys., Inc.*, 140 F.3d at 1458. Likewise, arguments to the patent office will create estoppel if they are sufficient to evince a clear and unmistakable surrender of the subject matter. *Litton Sys., Inc.*, 140 F.3d at 1458 ("This principle presupposes that the applicant has made the surrender unmistakable enough that the public may reasonably rely on it."); *Hoganas AB*, 9 F.3d at 952. "Unmistakable assertions made by the applicant to the ... [PTO] in support of patentability, whether or not required to secure allowance of the claim" may work an estoppel. *Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174 (Fed.Cir.1993). Multiple statements made by Bayer during prosecution of its patent evinced a surrender of crystals beyond the 1.0 to 4m²/g SSA range. *See supra* pp. 1301–1302. Particularly the court points to Bayer's repeated statement that its claimed range was "particularly advantageous" and exhibited a "plateau effect." Bayer also indicated to the PTO that nifedipine crystals with a SSA higher than

about 4m²/g showed an unexpectedly decreasing effectiveness.

Examining the prosecution history as a whole and considering the evidence in the light most favorable to Bayer, the court concludes that a competitor reasonably would conclude from the prosecution history that Bayer had relinquished subject matter outside its claimed range of 1.0 to 4m²/g. *See Mark I*, 66 F.3d at 291. As the application of the doctrine of prosecution history estoppel is a question of law, this determination is appropriately made at this stage. *Id.* Elan is therefore entitled to judgment as a matter of law as to its defense of prosecution history estoppel.

### Conclusion

In accordance with the above discussion, the court hereby GRANTS Elan's motion to file excess pages [102–1] and GRANTS defendant Elan's motion for summary judgment [49–1].