**Alfred DANA III, Plaintiff–Appellee,**

v.

**E.S. ORIGINALS, INC., K–Mart Corporation, Dayton–Hudson Corporation, Wal–Mart Stores, Inc., The Kobacker Company, Inc., and Conway Stores, Inc., Defendants–Appellants,**

and

**Fabco Enterprises, Inc., Montgomery Ward & Co., Inc., and the Caldor Corporation, Defendants.**

**No. 02–1531.**

United States Court of Appeals, Federal Circuit.

Sept. 8, 2003.

Melvin K. Silverman, Melvin K. Silverman and Associates, P.C., of Ft. Lauderdale, FL, argued for plaintiff-appellee.

Martin W. Schiffmiller, Kirschstein, Ottinger, Israel & Schiffmiller, P.C., of New York, NY, argued for defendants-appellants. With him on the brief was Lisa A. Pieroni.

Before RADER, BRYSON and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge BRYSON. Circuit Judge DYK concurs in a separate opinion.

BRYSON, Circuit Judge.

This is an appeal from a final judgment of patent infringement entered by the United States District Court for the Southern District of Florida. The appeal focuses on the district court's application of collateral estoppel based on rulings entered against the defendants in an earlier case. The district court held that the defendants were collaterally estopped from contesting the issues of infringement and patent validity. We vacate the judgment and remand to the district court for further proceedings.

I

Plaintiff Alfred Dana filed this action against nine defendants, including the six appellants. Mr. Dana alleged that the defendants had infringed U.S. Patent No. 4,158,922 ("the '922 patent"), entitled "Flashing Discoshoes," by marketing footwear featuring flashing light displays. Mr. Dana sought damages for the alleged in-

fringement that took place in the period prior to August 11, 1993, during which he owned the '922 patent. The defendants denied infringement and argued that the '922 patent was invalid.

Mr. Dana filed a motion for partial summary judgment as to liability, arguing that the defendants were collaterally estopped from denying infringement or challenging the validity of the '922 patent. Mr. Dana relied on orders entered in an action in the United States District Court for the Central District of California. In that action, L.A. Gear, Inc., which had purchased the '922 patent from Mr. Dana in 1993, alleged that the same defendants that are involved in this case infringed the '922 patent following the assignment of patent rights from Mr. Dana. That assignment expressly reserved to Mr. Dana the right to sue for pre-assignment infringement of the '922 patent.

The district court in the California action entered orders of partial summary judgment, holding that the '922 patent was enforceable, that the asserted claims of the patent were not invalid, and that the defendants had infringed the patent under the doctrine of equivalents. The court did not at that time address the issue of induced infringement, which was asserted against some of the defendants. Two months after the entry of those orders, the parties entered into a settlement agreement that included the entry of a consent decree by the court. The consent decree enjoined the defendants from marketing the accused shoes. The decree also recited that it was the intention of the parties that the partial summary judgment orders "shall have no collateral estoppel or res judicata effect with respect to or in favor of any third party," but added that the court "takes no position with respect to this intent."

In this case, Mr. Dana sought to use the orders issued in the California action to foreclose the defendants from arguing that the '922 patent is invalid and that the accused products do not infringe. The district court found that the issues of validity and infringement in the two cases were identical, that those issues had been fully litigated in the California action, and that the orders of the California court were sufficiently final to justify the application of collateral estoppel.

The district court noted that this case involves the application of offensive collateral estoppel, i.e., the use of collateral estoppel by a plaintiff who was not a party to the prior action against a defendant who was. Citing the Supreme Court's decision in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the district court reviewed the factors that the Supreme Court identified as relevant to whether offensive collateral estoppel should be applied in a particular case. The district court then found that "none of the circumstances that might cause hesitation in the offensive use of collateral estoppel are present." First, the court determined that the defendants were aware that Mr. Dana was a potential adversary in a future action and that they had "attempted to preclude future litigation by a private agreement in lieu of joining the assignor." Second, the court found that the defendants had not shown that their exposure to damages in the present case exceeded their exposure in the California action. Third, the court explained that application of collateral estoppel in this case would not be inconsistent with any prior judgment. Fourth, the court found no important procedural factors present in this case that were absent in the first action. Finally, as to the statement in the consent decree that the parties intended to limit its estoppel effect to the parties to the agreement, the court held that the statement had no effect on Mr. Dana because such an agreement does not

bind a person who is not a party to it. Accordingly, the district court held that the defendants were barred from relitigating the issues of infringement and validity in this case.

## II

### A

■■■ A party asking the court to apply collateral estoppel must establish that: "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir.1998); *see also Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir.2000). On procedural issues not unique to this circuit's exclusive jurisdiction, we apply the law of the regional circuit, which in this case is the Eleventh Circuit. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed.Cir.1999); *see, e.g., Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1345 (Fed.Cir. 2002).

### 1

■■■ The defendants argue that because the partial summary judgment orders entered in the California case were not final, appealable orders, they did not have a full and fair opportunity to litigate the issues of infringement and validity in the California action. In order for those prior rulings to be given collateral estoppel effect, however, it is not necessary for them to be final orders for purposes of appeal. *Christo*, 223 F.3d at 1338–40. It is "widely recognized that the finality requirement is less stringent for issue pre-clusion than for claim preclusion." *Id.* at 1339. Section 13 of the Second Restatement of Judgments, cited with approval in *Christo*, 223 F.3d at 1339 n. 47, provides that "for purposes of issue preclusion ... final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Restatement (Second) of Judgments* § 13 (1982). The test for finality is whether the prior decision was "adequately deliberated and firm" or "avowedly tentative," and whether the parties were fully heard in the prior proceeding. *Id.* § 13, cmt. g. In *Christo* itself, the court found certain "preliminary findings" to be sufficiently final for collateral estoppel purposes where the court that entered those findings considered evidence from all parties, issued a substantial order explaining its findings, and put the parties on notice of the potential preclusive effect of the findings. *Christo*, 223 F.3d at 1339.

This court has recently applied *Christo* in *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255 (Fed.Cir. 2003). In that case, we held that partial summary judgment orders entered by a Virginia district court that included rulings on claim construction did not preclude a patentee from arguing for a different claim construction in an action brought in an Alabama district court. The Virginia court had entered orders that incorporated a claim construction, but before the case went to trial on the issue of infringement the parties settled. The district court in the follow-on action declined to apply collateral estoppel against the patentee based on the claim construction employed by the Virginia court in the pretrial orders.

Applying Eleventh Circuit law, this court stated that the Virginia court orders "were not sufficiently firm to have preclusive effect" and distinguished *Christo* on three grounds. First, no evidentiary hear-

ing was conducted in the Virginia case; for that reason, this court concluded that "it is questionable whether the parties were 'fully heard'" on the issue. Second, unlike in *Christo*, the parties were not on notice that the orders in the Virginia case could have preclusive effect elsewhere. Third, the Virginia court did not enter a final order approving the proposed settlement of that action.

With regard to whether the party to be estopped had a full and fair opportunity to litigate and whether the partial summary judgment orders were sufficiently final to be accorded preclusive effect, this case is closer to *Christo* than to *RF Delaware*. In the *RF Delaware* case, the issue as to which the defendant was seeking issue preclusion was claim construction, on which the district court might have modified its position at trial. In both of the pertinent orders from the California case, by contrast, the court set forth its findings of fact and conclusions of law in fully reasoned opinions. Those orders were not preliminary in nature, but made clear that they fully and finally resolved the matters addressed. The court in the California action clearly considered the issue of direct infringement and validity to be conclusively decided and complete, with only damages and a separate claim on inducement of infringement remaining as open issues.

Unlike in *RF Delaware*, the district court in this case found that the parties were aware of the potential future application of the doctrine of collateral estoppel. The inclusion of language in the consent decree attempting to limit the estoppel effect to the two parties to the agreement is evidence that the defendants were aware of the risk of a suit by Mr. Dana. Moreover, the orders in the California case indicate that the California district court conducted hearings addressing motions for partial summary judgment on both infringement and validity. Accordingly, we

agree with the district court that the parties were fully heard on those issues in the California case.

■ The defendants seek to distinguish *Christo* on the ground that *Christo* involved defensive collateral estoppel. Yet while it is true that "a stronger showing that the prior opportunity to litigate was adequate may be required" for offensive collateral estoppel than for defensive collateral estoppel, *Parklane*, 439 U.S. at 331 n. 16, 99 S.Ct. 645 the basic inquiry is the same: whether the party to be estopped had a full and fair opportunity to litigate the issue in question. *See Restatement (Second) of Judgments* § 29 (1982). And as to that issue, we find no error in the district court's conclusion that the defendants had ample opportunity and incentive to litigate the issues of infringement and validity in the California case.

The defendants rely on *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265 (5th Cir.1986), for the proposition that a partial summary judgment order is not a final judgment for purposes of res judicata and collateral estoppel. In *Avondale*, a district court had entered a partial summary judgment order in a personal injury case ruling that a ship under construction in Avondale's shipyard was a "vessel," for purposes of the Longshore and Harbor Workers' Compensation Act, and that it was under Avondale's control at the time an employee was injured on the premises. Avondale subsequently settled that case. In Avondale's later indemnity action against other defendants, the district court held that Avondale was collaterally estopped by the earlier ruling from denying that the ship was a "vessel" under Avondale's control at the time of the injury. The Fifth Circuit reversed that ruling, holding that the partial summary judgment order was not sufficiently final to be given collateral estoppel effect. Although

the court stated that an order granting partial summary judgment has no res judicata or collateral estoppel effect, the court focused on the fact that the partial summary judgment order did not determine Avondale's liability but merely addressed some of the relevant issues in that action. *Id.* at 1272.

It appears that the order at issue in *Avondale* is less final than the order at issue in this case. In any event, *Avondale* was decided by the Fifth Circuit after the creation of the Eleventh Circuit and therefore is not binding here. The *Christo* case makes clear (as does our decision in *RF Delaware* ) that the Eleventh Circuit follows the more flexible approach employed by the Restatement of Judgments, which gives collateral estoppel effect to orders that do not constitute final, appealable judgments if they are "sufficiently firm to be accorded conclusive effect." *Christo,* 223 F.3d at 1339 n. 47.

### 2

The defendants also contend that the issues in this case are not identical to the ones involved in the prior action. The defendants state that "[w]hile the ... shoes are admittedly the same here as in the L.A. Gear action and [the defendants] likewise deny infringement, the evidence submitted by [the defendants] in opposition to Dana's summary judgment motion here differed qualitatively and quantitatively from the evidence submitted to the [California] court." That statement does not indicate that there is any difference in the issues presented in the two cases. Instead, it simply reflects the defendants' wish to buttress their case through different evidence, including a new expert witness declaration. The actions involve the same patent, the same accused products, and the same argument with respect to activation of the lights on the footwear. As such, the issues presented to the district court in this case are identical to those resolved by the district court in the California action.

### 3

The defendants also argue that Mr. Dana cannot show that determination of the pertinent issues was critical and necessary to the judgment in the first action, because no final judgment was ever entered in the California action. That argument, raised for the first time in the defendants' reply brief in this court, is simply a repackaged version of their finality argument, which we have already addressed and rejected. The issues as to which Mr. Dana wishes to give the California orders collateral estoppel effect—infringement and validity—were obviously critical and necessary elements of the California court's holding that the defendants had infringed the '922 patent and that the patent was not invalid.

Accordingly, we hold that the legal prerequisites for applying collateral estoppel were satisfied in this case. That determination does not conclude our analysis, however, because we must also consider whether equitable factors weighing against the offensive use of collateral estoppel are present in this case such that the district court's invocation of the doctrine would be an abuse of discretion. *See Parklane,* 439 U.S. at 331, 99 S.Ct. 645 (concluding that "the preferable approach ... is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied").

### B

The Supreme Court in *Parklane* recognized that offensive collateral estoppel must be applied with circumspection, even when the legal requirements for applying collateral estoppel are satisfied. As the Court explained, offensive collateral estop-

pel carries with it the danger that, in cases involving multiple potential plaintiffs, the plaintiffs will not all join in a single lawsuit, but instead some plaintiffs will postpone filing their actions in order to await the outcome of other plaintiffs' efforts. Because potential plaintiffs are not bound by any decision favorable to the defendant in earlier lawsuits, but can seek to take advantage of any decision favorable to another plaintiff, the availability of offensive collateral estoppel creates a "no-lose" incentive for plaintiffs to hold back and await developments in other plaintiffs' cases. *See Deweese v. Town of Palm Beach,* 688 F.2d 731, 733 (11th Cir.1982) (the "availability of the doctrine creates a 'free rider' problem by encouraging potential plaintiffs to wait on the sidelines until another plaintiff successfully establishes liability"). In response to that concern, the Supreme Court in *Parklane* stated that when deciding whether to apply offensive collateral estoppel in a particular case courts should follow "[t]he general rule ... that in cases where a plaintiff could easily have joined in the earlier action or where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Parklane,* 439 U.S. at 331, 99 S.Ct. 645.

Citing *Charles J. Arndt, Inc. v. City of Birmingham,* 748 F.2d 1486, 1494 (11th Cir.1984), the defendants contend that Mr. Dana should not be allowed to invoke offensive collateral estoppel because he could have intervened in the California action but instead waited to see how that case came out. They argue that Mr. Dana was fully aware of the California litigation, as evidenced by the fact that L.A. Gear deposed him in that case. In the course of oral argument to the district court, Mr. Dana's counsel suggested that Mr. Dana did not join the California action either for reasons of expense or because he had no right to join that action.

The district court did not make a finding as to whether Mr. Dana "could have easily joined in the earlier action," *Parklane,* 439 U.S. at 331, 99 S.Ct. 645. Instead, the court stated that the defendants were "aware of the assignor patent-owner as a potential adversary in a future action and attempted to preclude future litigation by a private agreement in lieu of joining the assignor."

That is not the inquiry that *Parklane* requires. Rather than asking whether Mr. Dana, who was aware of the California action, could easily have joined it, the district court purported to address the finding required by *Parklane* by noting that the defendants, who were aware of Mr. Dana as a potential future plaintiff, had not joined him in the California action. That approach has two problems. First, it suggests that it was the defendants' burden to find a way to add Mr. Dana's claims to the California action, whereas the Supreme Court in *Parklane* indicated that it was the plaintiff who would be expected to take steps to join in the earlier action, if possible. Second, it is by no means clear how the defendants could have made Mr. Dana a party to the California action. As defendants, they had no power to force him to sue them in that forum, and it is highly doubtful that they could have brought him into the California action by means such as a declaratory judgment, given the absence of any ongoing infringement of his patent rights or any apparent threat of suit on his part, *see Fina Research, S.A. v. Baroid Ltd.,* 141 F.3d 1479, 1481 (Fed.Cir.1998), not to mention the difficulties that may have been presented by attempting to obtain personal jurisdiction over him in California.

Because the district court did not make a finding as to whether Mr. Dana could easily have joined the earlier action, and in light of the importance of that issue both

to the Supreme Court, as expressed in *Parklane,* and to the Eleventh Circuit, as expressed in *Arndt,* we vacate the decision of the district court and remand for further inquiry with respect to that issue.

As the district court found, however, the other factors that *Parklane* identified as giving rise to potential unfairness in applying offensive collateral estoppel to defendants do not appear to be present in this case. That is, the district court reasonably concluded that there was no showing that the defendants' exposure to damages in this case is large compared to their exposure in the California case. *Parklane,* 439 U.S. at 330, 99 S.Ct. 645. *See, e.g., Deweese,* 688 F.2d at 734. The court was also correct in noting that there is no indication that the partial summary judgment orders in the California case were inconsistent with any previous judgments in favor of the defendants and that the second action would not afford the defendants any procedural opportunities that were unavailable in the first action. The district court on remand should therefore focus on the ease of joinder issue to determine whether Mr. Dana could easily have joined the California action and therefore should be denied the benefits of a favorable outcome in that case because he chose not to expose himself to the risk of an unfavorable one.

Because the only issue that is ripe for us to address on this appeal is the district court's ruling that the defendants are collaterally estopped from relitigating the issues of invalidity and noninfringement of the '922 patent, we do not address the defendants' arguments with respect to the merits of the infringement case against them.

Each party shall bear its own costs for this appeal.

*VACATED and REMANDED.*

DYK, Circuit Judge, concurring.

Although I agree with the majority that we are constrained by our cases to apply regional circuit law here on the issue of collateral estoppel, I write separately to emphasize my view that we should apply our own law to issues of res judicata and collateral estoppel, and to make clear what, in my view, we are not deciding.

I

In an earlier concurrence in *Vardon Golf Co. v. Karsten Manufacturing Corp.,* 294 F.3d 1330 (Fed.Cir.2002), I urged that we should apply our own law to issues of res judicata and collateral estoppel. *Id.* at 1335–36 (Dyk, J., concurring). At present our jurisprudence on this question is at best confusing. We have held that, as a general matter, the law of the regional circuit applies to issues of res judicata and collateral estoppel. *Media Techs. Licensing, LLC v. Upper Deck Co.,* 334 F.3d 1366, 1369 (Fed.Cir.2003) (res judicata); *Bayer AG. v. Biovail Corp.,* 279 F.3d 1340, 1345 (Fed.Cir.2002) (collateral estoppel); *accord RF Del., Inc. v. Pac. Keystone Techs., Inc.,* 326 F.3d 1255, 1261 (Fed.Cir. 2003) (holding that, because it is "a purely procedural issue … in circumstances such as those presented here," the law of the regional circuit applies to collateral estoppel with respect to the effect of a previous judgment); *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha,* 58 F.3d 616, 618 (Fed. Cir.1995). However, in *Foster v. Hallco Manufacturing Co.,* 947 F.2d 469 (Fed.Cir. 1991), we held that the res judicata effect of a consent judgment is governed by our own law because we "perceive[d] a clear need for uniformity and certainty" in the application of res judicata "as applied to a consent decree holding a patent valid and infringed." *Id.* at 475. We later characterized that case as an exception because it "was in substance a question of patent

law." *Mars Inc.*, 58 F.3d at 618. We have also held that our own law determines whether a patentee is collaterally estopped from contesting the validity of his patent, citing the Supreme Court's decision in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). *See, e.g., Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379–80 (Fed.Cir.1999); *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed.Cir. 1983).

There are substantial reasons to apply our own law on all issues of res judicata and collateral estoppel. We have held that "we apply regional circuit law to nonpatent issues" in part "to minimize the incentive for forum-shopping by parties who are in a position to determine, by their selection of claims, the court to which an appeal will go." *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir.1999) (en banc in relevant part). Applying regional circuit law to issues of res judicata and collateral estoppel, however, simply encourages forum shopping. Res judicata and collateral estoppel may be outcome determinative, so there is a strong incentive to select a favorable forum. *Vardon Golf*, 294 F.3d at 1336 (Dyk, J., concurring). As I noted in *Vardon Golf*, "[t]here is simply no reason why an earlier patent judgment should have one consequence in the Third Circuit and another in the Seventh Circuit, for example. Such an approach encourages the very forum shopping that our regional circuit law approach was designed to prevent." *Id.*

I express no view here as to whether, applying our own law, we should adopt the Eleventh Circuit rule or the stricter final judgment rule apparently adopted by the Fifth Circuit. *See* Maj. Op., *ante*, 1324–1325.

## II

I also write separately to emphasize that our decision today does not determine that the parties to a district court settlement agreement lack a mechanism to prevent interim decisions in that litigation from having collateral estoppel effects in future third party litigation. That goal could perhaps be accomplished by moving to vacate the district court's earlier decision as part of the settlement. The Supreme Court's decision in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), held only that such a vacatur was inappropriate by the Supreme Court and the courts of appeals on review of a final district court decision. *Id.* at 28–29. *Bancorp* did not, however, address the power of the district court to vacate non-final orders pursuant to a settlement agreement. Indeed, by its terms, *Bancorp* does not apply to district courts but rather only to the Supreme Court and to courts of appeals. *See id.* at 19, 28, 115 S.Ct. 386; *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 117–21 (4th Cir.2000) (concluding, however, that the same analysis should be conducted with respect to district court Rule 60(b) motions); *cf. Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed.Cir. 1998) (holding that *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), which prohibits the Federal Circuit from vacating a judgment of invalidity when we have found the patent not to have been infringed, does not prohibit a district court from dismissing a counterclaim of invalidity when it has found no infringement). However, no effort was made here to vacate the earlier district court order.

Alternatively, the parties might agree as part of the settlement that the earlier decision would have no res judicata or collateral estoppel effect, as they appear to have

attempted to do in this case. *See Foster v. Hallco Mfg. Co.,* 947 F.2d at 480–81; *Hartley v. Mentor Corp.,* 869 F.2d 1469, 1472 (Fed.Cir.1989) (suggesting that the preclusive effect of earlier interlocutory orders is to be determined by interpreting the settlement agreement). It can be argued that the "strong public interest in settlement of patent litigation," *Foster,* 947 F.2d at 477, would be served by allowing the parties to a settlement at the district court level to determine the collateral estoppel effect of earlier orders in the litigation. However, I do not read appellant's opening brief in this case as having raised this issue, and the majority quite properly refrains from addressing it.