THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
June 23, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

———

*The Board of Trustees of The University of Alabama and Paul W. Bryant, Jr.*
*v.*

*William Pitts, Jr. and Christopher Blackburn*

———

Opposition No. 91187103
to application Serial No. 77342852

———

R. Charles Henn, Jr., Alicia Grahn Jones and Nichole Davis Chollet of Kilpatrick Townsend & Stockton LLP for Opposers The Board of Trustees of The University of Alabama and Paul W. Bryant Jr.

Jerry L. Watts of Page, Scrantom, Sprouse, Tucker & Ford, P.C. for Applicants William Pitts, Jr. and Christopher Blackburn.

———

Before Rogers, Chief Administrative Trademark Judge, Richey, Deputy Chief Administrative Trademark Judge, and Zervas, Bergsman and Kuczma, Administrative Trademark Judges.

Opinion by Kuczma, Administrative Trademark Judge:

This decision concerns a request to re-open, vacate, and dismiss without prejudice the Board's prior precedential decision in light of the parties' settlement while that decision was under review by a district court. Because of the importance of this

issue and the frequency with which the Board has received similar post-decisional requests, we have augmented the panel to decide this request, which we unanimously deny.

## I.    Background.

### A.    The Board's 2013 Decision.

On July 23, 2013, the Board issued a precedential decision dismissing an opposition filed by The Board of Trustees of The University of Alabama and Paul W. Bryant Jr., son of legendary football coach Paul W. Bryant, (Opposers) against the registration of HOUNDSTOOTH MAFIA (and design) sought by William Pitts Jr. and Christopher Blackburn (Applicants) for "shirts, hats" in International Class 25.[1] *Bd. of Trs. of Univ. of Ala. v. Pitts*, 107 USPQ2d 2001 (TTAB 2013). The Notice of Opposition alleged that Applicants' HOUNDSTOOTH MAFIA (and design) mark was likely to be confused with trademark rights inuring to Opposers as a result of the University's longstanding use of a houndstooth pattern as well as a crimson and white color scheme in conjunction with the provision of athletic services, and as a result of Opposers' ownership of an Alabama state trademark registration for PAUL W. BRYANT MUSEUM  (and design), depicting a likeness of Coach Bryant wearing

---

[1] Application Serial No. 77342852 was filed under § 1(a) of the Trademark Act of 1946, 15 U.S.C. § 1051(a). The mark that is the subject of the Application is shown below:



Color is not claimed as a feature of the mark and the word "HOUNDSTOOTH" is disclaimed.

a houndstooth-patterned fedora, for museum services and apparel. *See* § 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d). Additionally, Opposers charged that Applicants' mark falsely suggested a connection with, and disparaged, the University and Coach Bryant under § 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a). *Id.*

The opposition was decided by the Board, and designated by the Board as a precedential decision, after full trial, briefing, and an oral hearing. The Board concluded that Applicants' mark was not likely to cause confusion with any of Opposers' asserted marks, in part because Opposers failed to show acquired distinctiveness in the alleged houndstooth pattern mark and also because of the lack of similarity between Applicants' mark and either the PAUL W. BRYANT MUSEUM (and design) mark or the crimson and white color scheme. Further, Opposers failed to introduce evidence to show that the houndstooth pattern functions as a source or sponsorship indicator for products sold or licensed by the University. In addition, the Board concluded that Applicants' mark does not falsely suggest a connection with Opposers, as Opposers failed to show that Applicants' mark closely approximates the identity or persona of either Coach Bryant or the University or points uniquely to them. Finally, the Board concluded that Applicants' mark does not disparage Opposers due to the incongruous connotation applied to the "MAFIA" portion of the mark by virtue of its context. Consequently, the Board ordered dismissal of all claims with prejudice and, contingent on Applicants ultimately prevailing in any

appeal of the Board's decision, remand of the matter to the examining attorney to address irregularities in the Application.[2] *Id.* at n. 1.

## B.  Opposers Challenge the Board's 2013 Decision in District Court.

Opposers sought review of the Board's order by means of a civil action filed in U.S. District Court for the Northern District of Alabama, pursuant to § 21(b) of the Trademark Act of 1946, 15 U.S.C. § 1071(b).[3] While the civil action was pending, Opposers and Applicants settled the case and consented to entry of final judgment in the action in favor of the Plaintiffs (Opposers at the Board). Pursuant to the settlement, the parties drafted and submitted to the Court a Final Consent Judgment. The settlement and Final Consent Judgment resulted in assignment of "all right, title, and interest in and to the HOUNDSTOOTH MAFIA mark," including the involved Application[4], from Applicants to the University. *See* Final

---

[2] The irregularities noted by the Board involved Applicants' March 19, 2008, Response to Office Action which attempted to amend the original identification of goods for "pants; shirts; shoes; undergarments" to read, "shirts; hats." The amendment did not conform to 37 C.F.R. § 2.71(a) because "hats" were not included in the original identification of goods and the signature on the Response did not conform to the requirements in 37 C.F.R. § 2.193(e)(2) in that it was not signed by the joint applicants.

[3] The Board's final decision in a trial case may be appealed to the U.S. Court of Appeals for the Federal Circuit, and the appeal will remain there absent the appellee's invocation of its right to remove the appeal to federal district court. Section 21(a)(1) of the Trademark Act of 1946, 15 U.S.C. § 1071(a)(1). Alternatively, the dissatisfied party may seek review by filing a civil action in federal district court. Section 21(b)(1), 15 U.S.C. § 1071(b)(1). While an appeal to the Federal Circuit is reviewed on a closed record, *i.e.*, the record on appeal, a civil action in federal district court gives litigants in *inter partes* disputes the option of introducing new evidence as well as arguing new issues, and, "where new evidence is presented to the district court on a disputed fact question, a de novo finding will be necessary to take such evidence into account together with the evidence before the board." *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 109 USPQ2d 1291, 1295 (4th Cir. 2014) (quoting *Kappos v. Hyatt*, 132 S. Ct. 1690, 1695-96 (2012)) (further citations omitted).

[4] Application Serial No. 86022067, not involved in the opposition, also was assigned.

Consent Judgment, ¶ 6. The Final Consent Judgment recites certain facts agreed to by the parties, but which might be understood to stand in contradiction to those found by the Board, based on the record presented to the Board, and recited in its July 23, 2013 order. Specifically, the parties stipulated as a factual matter that the houndstooth pattern enjoys "widespread association with the University" and that it "*has become* a well-known source identifier for the University." Final Consent Judgment, ¶ 2 (emphasis added).[5] The document further states: "*Plaintiffs* believe the Board's Order is clearly erroneous in a number of material respects . . . [and] [t]he parties acknowledge and agree that the Board's Order should be vacated." Final Consent Judgment, ¶¶ 4 and 5 (emphasis added). The district court issued the Final Consent Judgment on May 27, 2014, and ordered: 1) that the Clerk enter final judgment in favor of Plaintiffs/Opposers; 2) that the Board's order is vacated; and 3) that the "Register of Trademarks" allow the involved Application to proceed to registration once assignment of the mark to the University is properly recorded. The Final Consent Judgment does not address the prospective remand to the Examining Attorney referenced in footnote one of the Board's published, precedential decision.

---

[5] The Final Consent Judgment was entered on May 27, 2014. The Board's order issued July 23, 2013, some 10 months earlier, based on a trial that was conducted even earlier. Trademark rights—and, in particular, the issue of whether a trademark right has arisen due to a term or visual symbol having come to indicate source—are not static. *See, e.g.*, *In re Morton–Norwich Prods., Inc.*, 671 F.2d 1332, 1344, 213 USPQ 9, 18 (CCPA 1982). Thus, the parties' recitations in the Final Consent Judgment do not necessarily stand at odds with the Board's factual findings in its July 23, 2013, order. However, because there is no statement of the evidentiary basis, if any, for the recitations in the Consent Judgment, we cannot address the change in circumstances, if any.

On June 3, 2014, Opposers filed the "Request to Reopen, Vacate and Dismiss Without Prejudice" with the Board, along with a copy of the Final Consent Judgment. 73 TTABVUE.[6] The request states that assignment of the mark and Application has been properly recorded with the Assignment Division of the U.S. Patent and Trademark Office (USPTO). Opposers followed that filing on September 15, 2014, with a "Notice of Filing," under cover of which they submitted a copy of the Report on the Filing or Determination of an Action Regarding a Patent or Trademark, mailed to the Director of the USPTO from the U.S. District Court for the Northern District of Alabama, and a copy of the Final Consent Judgment as entered. 74 TTABVUE. Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a), allows the Board to treat as conceded any motion not contested by the non-movant, but does not require that result. Although Applicants did not file a brief in opposition to the Request to Reopen, Vacate and Dismiss Without Prejudice, the policies and public interest implicated by a request to vacate a prior precedential opinion based on settlement are important, and so we have decided, in our discretion, to assess the request on the merits. *See* Trademark Board Manual of Procedure (TBMP) § 502.04 (2014) ("[T]he Board, in its discretion, may also decline to treat an uncontested motion as conceded, and may grant or deny the motion on its merits.") and authorities collected in note 2. We deny the request for vacatur and dismissal without prejudice for the reasons set forth below.

---

[6] TTABVUE is the Board's electronic docket history system. *See Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014).

## II. Vacatur of Board final orders upon voluntary settlement.

When a registration dispute decided by the Board becomes moot due to voluntary settlement during a pending appeal, the appellate court normally dismisses the appeal as moot and remands the matter to the Board to allow the parties to move for vacatur there. *See*, *e.g.*, *Ohio Willow Wood Co. v. Thermo-Ply, Inc.,* 629 F.3d 1373, 1375 (Fed. Cir. 2011) (remand to the district court: "We have remanded so that the court that rendered the decision can decide whether to vacate it, based on our conclusion that the district court is in the better position to make that ruling, indeed to consider all the legal and equitable considerations as may be brought to its attention by those favoring and opposing the motion.") (citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 29 (1994)); *MidAmerican Energy Co. v. Mid-America Energy Resources, Inc.*, 250 F.3d 754 (Fed. Cir. 2000) (table) (in an *inter partes* case, the Federal Circuit held: "The parties' agreement does not render vacatur by this court appropriate. . . . The proper course is to remand the case so that the TTAB can consider MidAmerican's request for vacatur and dismissal of the opposition.") (citing *U.S. Bancorp,* 513 U.S. at 29).

The U.S. Supreme Court's decision in *U.S. Bancorp* holds that "mootness by reason of settlement does not justify vacatur of a judgment under review," in the absence of "exceptional circumstances."[7] 513 U.S. at 29. The *U.S. Bancorp* decision,

---

[7] Vacatur may be proper when a matter becomes moot on appeal outside of a voluntary settlement. In *Rolex Watch USA Inc. v. AFP Imaging Corp.*, 107 USPQ2d 1626 (TTAB 2013), the Board vacated its final order dismissing an opposition because the matter had become moot on appeal through the unilateral action of the Applicant, over the objection of the Opposer. While the matter was pending before the U.S. Court of Appeals for the Federal Circuit, the Applicant expressly abandoned its application without the Opposer's

though cited by the Federal Circuit in the decisions discussed above, only interprets 28 U.S.C. § 2106, which authorizes "[t]he U.S. Supreme Court or any other court of appellate jurisdiction . . . [to] affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review." Because the Board is not an Article III appellate court subject to 28 U.S.C. § 2106, *U.S. Bancorp* does not directly apply to us. *See, e.g.*, *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 117 (4th Cir. 2000) ("[T]he holding of *Bancorp* extends only to appellate court vacatur."); *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1328 (Fed. Cir. 2003) (Dyk, J., concurring) ("[B]y its terms, *Bancorp* does not apply to district courts but rather only to the Supreme Court and to courts of appeals."). Instead, the vacatur requests that we usually receive are typically styled as motions under Fed. R. Civ. P. 60(b).[8] But the Opposers here do not invoke Rule 60(b). Rather, they simply submit the Final Consent Judgment and a copy of the official form entitled "Report on the Filing or Determination of an Action Regarding a Patent or Trademark" that district courts fill out when a trademark case is concluded. So our first task is to determine the authority, if any, under which Opposers' request is made.

---

consent. The Federal Circuit dismissed the appeal as moot and remanded the matter to the Board for consideration of vacatur. The Board granted the Opposer's request for vacatur because it found the Applicant's action to be "manifestly unfair" in that it "frustrated opposer's statutory right to seek review of a decision it believes to be incorrect." *Id*. at 1628 (citing *Tessera Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 98 USPQ2d 1868, 1878 (Fed. Cir. 2011) (vacatur is proper where an appeal becomes moot through happenstance)).

[8] Rule 60(b) recites six grounds for relief and it is the last ground, "any other reason that justifies relief," that is pertinent for the Board, in the context of voluntary settlement during review of a Board decision. *See* Fed. R. Civ. P. 60(b)(6).

This request came from the party plaintiffs (Opposers) to a district court action in which a § 21(b) challenge to our July 23, 2013, ruling was pending. We therefore assess the Opposers' request and the district court documents the Opposers have submitted against the backdrop of the actions a district court is authorized to take under § 21(b).

Section 21(b)(1) empowers a district court to adjudge:

[1] that an applicant is entitled to a registration upon the application involved,

[2] that a registration involved should be canceled, or

[3] such other matter as the issues in the proceeding require, as the facts in the case may appear.
(*bracketed numbers added, spacing altered*).

Section 21(b)(1) also provides that a district court having adjudicated such matters [4] "shall *authorize* the Director to take any *necessary action*, upon compliance with the requirements of law." (emphasis added).

The Final Consent Judgment, referencing no record evidence, does not appear to involve adjudication, and does none of these things a court is empowered to judge or directed to inform the Director of, following adjudication. The judgment does not order that the Applicants are entitled to a registration (no. [1]). It does not order that a registration be canceled (no. [2]).[9] We can identify no other "issues" in the

---

[9] In any event, we had already determined that applicant was entitled to a registration and neither the Board Opposition proceeding nor the district court proceeding involved a request to cancel any registration. Thus, these two items are inapposite to the case at hand.

case whose facts were determined by the court (no. [3]). And vacatur of our precedential opinion is not a "necessary action" (no. [4]).

We understand the district court to have directed the USPTO to allow the involved Application to proceed to registration because Opposers' challenge to registration of the HOUNDSTOOTH MAFIA mark is mooted by assignment of the mark and application to the University. That is not a directive that requires vacatur of the Board's order and dismissal of the opposition proceeding without prejudice as a *necessary action*. Opposers' claims were dismissed at the Board and the assignment is all that is necessary to allow the application to proceed to registration for the University. In that respect, this case stands in contrast to the Board's handling of a post-decisional request filed in *Ballet Tech Found. Inc. v. The Joyce Theater Found. Inc.* 89 USPQ2d 1262 (TTAB 2008) (consolidated Opposition No. 91180789 and Cancellation No. 92042019), *final judgment vacated as moot, Ballet Tech Found. Inc. v. The Joyce Theater Found. Inc.* (TTAB November 14, 2013) (not a precedent), where vacatur was a "necessary action." In *Ballet Tech*, the Board, in a precedential opinion, sustained the opposition and granted the petition for cancellation, based on the determination that Opposer/Petitioner Ballet Tech Foundation Inc. was the owner of the JOYCE THEATER marks. 89 USPQ2d at 1276. Applicant/Respondent The Joyce Theater Foundation, Inc. sought review in the federal district court for the Southern District of New York; and during the civil action settled the case with Opposer/Petitioner by taking an assignment of its rights in the JOYCE THEATER marks. The parties then dismissed the appeal and filed a

joint motion at the Board under Fed. R. Civ. P. 60(b)(5) and (6), 36 TTABVUE 2-6. (Opposition No. 91180789), seeking "relief from the Board's December 11, 2008 final judgment." The Board granted the parties' joint motion, explaining that "the Final Judgment is hereby vacated as moot by virtue of the parties' settlement." 37 TTABVUE 1-2. *Ballet Tech* stands in contrast to the case at hand, insofar as the Board only vacated the judgment that would have otherwise stood in the way of The Joyce Theater Foundation's application moving forward and would have resulted in cancellation of its registrations. In the case at hand, the Board's precedential decision does not stand in the way of the University obtaining registration of the HOUNDSTOOTH MAFIA mark acquired by assignment from Applicant.

In sum, we are not an appellate court, so this request does not implicate 28 U.S.C. § 2106. Opposer did not invoke Rule 60(b). And we do not view this request as flowing from the authority of § 21(b)(1). We therefore may consider the request only under our general equitable authority, for a request for vacatur is a request for an equitable remedy. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1142 (10th Cir. 2010) ("because vacatur is an equitable remedy, we, like the district court, must also consider the public interest") (citing *U.S. Bancorp*, 513 U.S. at 26-27 (emphasizing the value of legal precedents to the public as a whole)); *see generally Md.-Nat'l Capital Park & Planning Comm'n. v. United States Postal Serv.*, 487 F.2d 1029, 1042 (D.C. Cir. 1973) ("Equitable remedies depend not only on a determination of legal rights and wrongs, but on such matters as laches, good (or bad) faith, and most important an appraisal of the public interest.") Because the

submissions presented to us by Opposers do not require analysis under Rule 60(b)(6)[10], we have in this case chosen to decide the request by balancing the equities.

In this case, though our analysis does not require application of such a standard, we do not see exceptional circumstances; nor do we see any other equitable basis short of exceptional circumstances, to the extent such might be all that is required, or any public interest, that would be furthered by vacatur. Looking at the terms of the Final Consent Judgment, we do not understand the district court to have made a determination that the Board's final order was wrong in any respect. All it recites is that it is *Plaintiffs'/Opposers' opinion* that the Board's order was erroneous, in unspecified "material respects." Indeed, we do not read it to reflect an adjudication of any of the facts or issues in the case before the court.

Moreover, we determined at the time we issued the prior decision in this case that it should serve as Board precedent, in order to provide guidance to trademark practitioners on the issues decided in that decision. The Final Consent Judgment points to no legal error in our prior decision, and we have not been alerted to any aspect of the public interest that would be furthered by vacatur and would outweigh our initial determination of the precedential value of the prior decision.

---

[10] Opposers' request for vacatur and dismissal without prejudice does not come before us as a Rule 60(b)(6) motion committed to the Board's discretion. Rather, it is a request that we enforce the terms of the district court's consent judgment. Our interpretation of Opposers' request stems from the fact that the district court did not dismiss the civil action and remand the matter to us once it became moot due to voluntary settlement, but instead entered a consent judgment. If we did have a Rule 60(b)(6) motion properly before us, we would weigh the public interests in precedent, preclusion, and judicial economy and the circumstances, hardships, and interests of any involved parties, as well as any other relevant equitable consideration.

**Decision:** The Opposers' Request to Reopen, Vacate and Dismiss Without Prejudice is denied. The Board's July 23, 2013, opinion and order in this proceeding stand as issued. The Application will be remanded to the Examining Attorney for consideration of the irregularities described in note 2 of this decision.